UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>       Plaintiff,<br><br>vs.<br><br>ENCYCLOPAEDIA IRANICA FOUNDATION,<br><br>       Defendant. | Case No.<br><br>**COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff The Trustees of Columbia University in the City of New York by its attorneys, Reitler Kailas & Rosenblatt LLC, as and for its Complaint against the Defendant herein, alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff brings this declaratory action pursuant to 28 U.S.C. §§ 2201 and 2202 in order to prevent Defendant from (a) claiming to be the owner of copyright in a multi-volume scholarly encyclopedia the ("Work") that Defendant did not create and for which it can show no written transfer of copyright ownership; and (b) claiming to be the owner of exclusive trademark rights in the name of the Work and a logo that appears on the Work; and (c) interfering with Plaintiff's contractual relationships with third parties regarding the distribution and other use of the Work.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338.  This Court has federal question jurisdiction in this matter in that the Plaintiff seeks a declaratory judgment against the defendant herein declaring Plaintiff's rights under, *inter alia,* the U. S. Copyright Act of 1976, 17 U.S.C. §§101 *et seq.*

3.      Venue lies within this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)(2)(3), 1391(c), and 1400(a) in that Defendant is a not-for-profit corporation organized and subsisting under the laws of the state of New York having a principal office in this judicial District, and a substantial part of the events or the omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

4.      Plaintiff (hereafter "Columbia") is a not-for-profit tax exempt educational institution organized and subsisting under the laws of the State of New York.

5.      Defendant Encyclopaedia Iranica Foundation ("Defendant," "EIF" or the "Foundation") is a not-for-profit corporation organized and subsisting under the laws of the state of New York having a principal office in this judicial district.

## FACTUAL BACKGROUND

### Professor Yarshater, the Center for Iranian Studies, and the Work

6.      Historian Ehsan Yarshater ( "Prof. Yarshater") began to teach at Columbia in 1958, first as a Visiting Associate Professor from 1958-1960 and then as the Hagop Kevorkian Professor of Iranian Studies from 1960 until his retirement in 1999.

7.      In 1968, he founded the Center for Iranian Studies at Columbia University, (the "Center") which was then, as now, housed in a Columbia-owned building at 450 Riverside Drive, near the Columbia campus.

8.      In 1972, he began work on a Persian encyclopedia of Islam, a precursor to the Encyclopedia Iranica at issue here.

9.      In 1979, Prof. Yarshater begin work on the Encyclopedia Iranica itself, an ongoing scholarly resource on Persian and Iranian history which has become the Center's most prominent publication and is internationally regarded as the most comprehensive account of several millennia of Iranian history, language and culture in the Middle East, the Indian subcontinent and Central Asia.

10.     In 1983 he established the Persian Heritage Foundation ("PHF"), originally called The Yarshater Fund, a U.S.-registered, non-political, non-governmental 501(c)(3) organization.

11.     PHF supports and promotes research on all aspects of the Persianate world in the pre-Islamic as well as the Islamic period. Since its inception, PHF has provided funding to the Work and the Center, culminating in PHF's endowment of the Center to rename it the Ehsan Yarshater Center of Iranian Studies in July of 2018.

12.     The Work has also received financial support, since its inception in the 1970s, from other significant sponsors, including the National Endowment for the Humanities ("NEH"), which supported it as a "major project" from 1979 to 2016.

13.     The Work was also provided with major support from numerous donors including the International Union of Academies, the Iran Heritage Foundation (London), the Semnani Foundation, the Institute of Ismaili Studies (London), and the Les Amies de l'Encyclopedie Iranica (Paris), as well as individual benefactors.

14.     Prof. Yarshater served as the Director of the Center and the Editor-in-Chief of all publications produced in the Center, including the Work, from 1968 until 2017.

15.     In connection with the publishing activities of the Center, Prof. Yarshater also established the Bibliotheca Persica Press, Inc., which was incorporated in New York in 1998 as a not-for-profit entity, with initial funding from PHF.

16.     The first fascicle of the Work was published in 1982 and was registered in the U.S. Copyright Office.  A list of all copyright registrations for the Work is attached as Exhibit A hereto.

17.     At all times, copyright in the Work has been owned by Columbia under Columbia's official copyright policy ("Copyright Policy").

18.     The current version of the Copyright Policy, approved by the Trustees of the University and effective on June 3, 2000,  provides at section I.B. as follows:

> The University asserts copyright ownership in any work of authorship that is: (i) created with substantial use of University resources, financial support or non-faculty University personnel beyond the level of common resources provided to faculty; (ii) created or commissioned for use by the University; or (iii) created under the terms of a sponsored project where the terms of the sponsored project require that copyright be in the name of the University. Additionally, any work created by an officer of administration (including a faculty member or officer of research only when acting in his or her capacity as an officer of administration), or by a support staff member acting within the scope of his or her employment generally constitutes a "work made for hire" as defined by federal law [internal reference omitted], and the University asserts copyright ownership in such works.

19.     The Work satisfies the above conditions.

20.     Columbia is the owner of the copyright in the Work under its copyright policy in effect prior to June 3, 2000.

21.     The first volume of the Work, like all subsequent volumes, bore the name ENCYLOPAEDIA IRANICA (the "Mark") and was marked with a distinctive visual design (the "Logo").

22.     Subsequent volumes of the Work, bearing the Mark and the Logo, were published periodically in the years that followed and publication has continued to the present.

### The Encycopaedia Iranica Foundation

23.     In 1990, following the publication of Volume 4 of the Work, Prof. Yarshater established Defendant EIF to help ensure the continuation of the Work by providing financial support for the Work.

24.     Upon information and belief, formed after a reasonable investigation, EIF was founded as a 501(c)(3) public charity to raise NEH matching funds for the creation of the Work at Columbia, and received one or more NEH challenge grants on that basis.

25.     Prof. Yarshater was the President of EIF from its establishment until his death on September 2, 2018.

26.     Beginning in 1993, after the publication of Volume 6 of the Work, Defendant EIF made periodic donations to the Center in support of the Work until 2017.

27.     The mission of EIF, according to its Certificate of Incorporation of June 1990, is to "promote the cause of the Encyclopaedia Iranica and assure the continuation thereof"; "to establish an endowment fund for the Encyclopaedia Iranica"; and to "help others to publish, disseminate, and distribute the results of such research."

28.     Subsequent EIF documents, including the 2008 and 2009 Foundation reports to donors, confirmed that the Work is "a project of Columbia University's Center for Iranian Studies" and that "the Center for Iranian Studies at Columbia carries out the academic functions of the Encyclopaedia, while the Foundation concentrates on raising funds for the project."

29.     These documents confirmed that the Foundation is "not involved in the academic and technical aspects of the project."

30.     A number of other documents created by Defendant confirm Columbia's ownership of the Work, including numerous Form 990 filings with the Internal Revenue Service, Defendant's 2008 Annual Report, a 2012 promotional brochure, and Defendant's 2017 financial statement.

31.     Without Columbia's knowledge, and despite EIF's repeated public acknowledgements that it had no role in the "academic and technical" aspects of the Work, EIF began to list itself as the "claimant" on copyright registration filings for the Work starting with Volume 11 in 2003.

32.     All previous copyright registration filings for the Work had named Bibliotheca Persica Press, and/or Columbia or the Persian Heritage Foundation as the "claimants" of those registrations.

33.     Columbia was not advised of this change Defendant made in the claimant designation on the copyright registration forms, and did not learn of it until December 18, 2017.

34.     In 2012, Professor Yarshater asked that Vahid Noshirvani, a Yale Professor Emeritus of Economics, be appointed to serve as the Associate Director of the Center effective February 23, 2012.

### 2014-2017:  Defendant Requests Transfer of Columbia's Copyright in the Work

35.     In 2014, while Professor Noshirvani was Associate Director, it came to Columbia's attention that Defendant was physically housed in the Center and was occupying portions of the Columbia owned building at 450 Riverside Drive.

36.     In 2015, Defendant requested that Columbia transfer to Defendant all of Columbia's copyright ownership in the Work under clause II.D. of the University's Copyright Policy.  That clause provides as follows:

If the University has determined that a work subject to University copyright ownership under this Policy has no likely commercial value, and subject to the terms of any applicable agreements with third parties under which the work was created, the University will consider a request by the creator to transfer copyright ownership in the work to the creator, subject to an irrevocable royalty-free license to the University to use the work for its own non-commercial purposes. Such a request must be approved by the Provost, and will be conditioned upon reimbursement of the University by the creator for out-of-pocket expenses the University has incurred in connection with the work, including legal and marketing expenses (if any). The University will act as expeditiously as reasonably possible in considering such requests by creators.

37.     Columbia declined Defendant's request to transfer copyright ownership in the Work to Defendant.

38.     Since its inception in 1979, more than a decade before Defendant was founded, and continuing until the present, the Work has at all times been a Columbia project, the copyright in which is owned by Columbia under the Copyright Policy.  Throughout this period, Columbia has provided continuing financial, logistical, administrative and facilities support for the Work and the Center.

39.     At no time did Prof. Yarshater have the authority to disregard the University's Copyright Policy or to transfer the University's copyright in the Work to EIF or to any other party, nor did Prof. Yarshater at any time advise Columbia that he had purported to make any such transfer.

40.     The year following Defendant's request for Columbia to transfer copyright in the Work under Section II.D. of the Copyright Policy, Dr. Noshirvani resigned his position as Associate Director of the Center effective December 31, 2016.

41.     Elton Daniel, a highly-regarded scholar of Middle Eastern and Islamic History, who had served during periods of academic leave as Associate Editor of the Work from 1997 to 2001, was appointed by Columbia on January15, 2017 at Prof. Yarshater's request to serve as the Interim Director of the Center and Editor-in-Chief of the Work.

42.     Professor Yarshater's health prevented him from participating in the oversight of the Center at this time.

43.     When Elton Daniel began his term as Acting Director in 2017, from January 1 until June 30, PHF was undergoing an internal reorganization and was temporarily unable to provide funding to the Center, which left Defendant as a principal source of funding for the Center during PHF's reorganization. Prior to this time, PHF and EIF, together with the NEH, had provided most of the non-Columbia funding for the Center.

44.     The Center's increased reliance on Defendant for funding in 2017 gave rise to problems almost immediately.  As documented in emails from Defendant to Dr. Daniel beginning in early 2017, Defendant insisted that none of the Center's funding could be used for any Center activity other than the Work.  Defendant also interfered with the Center's other activities, such as by asking the Center to prevent certain scholars from chairing a panel at a University seminar, thinking the panel was funded by the Center rather than the University, and by demanding that the Center draw up a "business plan" for Defendant's Board of Directors to use.

45.     Later in 2017, the successful reorganization of PHF and the Center's immediate need to cover expenses for another project, its History of Persian Literature, provided an opportunity for a new infusion of PHF funding to the Center, first through a gift donation and then through PHF's interest in funding an endowment, to honor Professor Yarshater and to institutionalize funding for the Work so that it could continue after his death.

46.     Defendant repeatedly interfered with both.  For example, in August 2017, Defendant demanded that any funding from PHF be donated to Defendant and not to the Center, which would have kept those funds from being used for PHF-related projects.  Indeed, Defendant

asserted at this time that every contribution from PHF to the Center was instead a "donation" from PHF to Defendant, and insisted that Dr. Daniel provide an accounting to Defendant for all contributions to the Center from any source.

47.     In December of 2017, at Defendant's request, representatives of Columbia and Defendant met to discuss the funding relationship and to clarify related University policy.

48.     At this meeting Columbia provided Defendant's representatives with a standard gift agreement, which Defendant refused to sign.  Instead, Defendant again requested that Columbia transfer its copyright in the Work to Defendant.

49.     Columbia again declined to make the requested transfer and explained the relevant Columbia policies that prohibited such a transfer.

50.     Defendant ceased funding the Center, with its last contribution dated June 30, 2017.

**Defendant's Disruption of The Center's Activities 2018-present**

51.     Since the funding relationship between Defendant and Columbia ended in 2017, Defendant has repeatedly disrupted the Center's activities regarding the Work.

Defendant's Assertion of Copyright Ownership

52.     In early 2018, Defendant asserted for the first time that it, and not Columbia, was the owner of copyright in the Work.

53.     Columbia investigated the recent history of the Work and determined that Defendant had, beginning in 2015 and without informing Columbia, unilaterally changed the copyright assignment forms that individual scholars signed when submitting contributions to the Work.

54.     The revised forms purported to assign the authors' contributions to Defendant rather than to Columbia or to the Editor of the Work, as had been the practice prior to 2015.

55.     Upon information and belief, formed after a reasonable investigation, the managing editor of the Work was responsible for sending the revised forms to authors of contributions, and that managing editor was also at the time an employee of the Center and *ex officio* member of the board of directors of Defendant EIF.

56.     The assignment forms unilaterally revised by Defendant cover numerous contributions to the Work, a complete list of which is attached as Exhibit B ("Improperly Assigned Contributions").

57.     Columbia has since confirmed with almost all of the authors of the Improperly Assigned Contributions that these authors did not intend for copyright in their contributions to be assigned to Defendant, and all such authors whom Columbia has been able to contact have executed corrected assignments, conveying the authors' copyrights in such contributions to Columbia.

58.     Defendant's outside counsel have repeatedly threatened Columbia with legal consequences for distributing the Work without Defendant's consent.

<u>USPTO Action</u>

59.     In an opposition proceeding in the U.S. Patent and Trademark Office, Opposition No. 91245273, Defendant has contested PHF's application for trademark registration of the Logo, which has been in continuous use by the Center and PHF in connection with the Work and its precursor since approximately 1974, *i.e.*, for more than fifteen years before Defendant existed.

60. The common-law trademark rights in the Logo, if any, are owned by the party or parties whose goodwill was first, and is still, associated with such Logo in connection with the goods at issue, namely Columbia and/or PHF.

61. Defendant is not such party, having only adopted the Logo, if at all, many years after the Logo's initial and continuing use by Columbia and/or PHF in connection with the Work.

62. This USPTO proceeding is still pending, and discovery is underway.

**Electric Pulp and Brill**

63. In June 2018, an employee working for both the Center and the Defendant erroneously turned over administrative control of the website connected to the Work, iranicaonline.org (the "Website"), to the Defendant.

64. At Columbia's request, the web management company that hosts the Website, Electric Pulp, Inc. ("Electric Pulp"), restored Website access to Columbia on February 4, 2019, but concluded that it could not determine who owns the Website.

65. Accordingly, Electric Pulp continues to allow Defendant to have administrative access to the Website and Electric Pulp will not give permission for Columbia to receive the data it has requested from the Website unless both Defendant and Columbia consent.

66. This lack of access to data from the Website is interfering with Columbia's ability to publish the Work, both in print and on-line, through Brill Publishers ("Brill"), a Dutch international academic publisher specializing in Middle East and Islamic studies, through which Columbia has chosen to continue publication of the Work.

67. Defendant's interference with the relationship between Electric Pulp and Columbia also makes it impractical for Columbia to continue to publish online new contributions

to the Work with Brill, or to correct already published contributions, and interferes with the ability of editors of the Work to make edits to current and forthcoming online contributions to the Work.

68.     As a result of Defendant's above-described actions, the editors of the Work have been unable to post new contributions to the Website since June 2018.

69.     Consequently, authors of these contributions have complained to the Center and questioned why their articles have not been published, despite the fact that their articles went through the formal editing and production process of the Center, including the meeting of deadlines by both authors and editors, and the payment of honoraria.

70.     Currently, Columbia has in place two contracts with Brill, one to publish in print Fascicle 4 of Volume 16 of the Work, which was issued in October 2018, and another to publish in print Fascicle 5 of Volume 16, which is scheduled for publication in September 2019. Columbia is preparing to enter into a contract with Brill for publication of the entire Work, both in print and on-line.

71.     Knowing of Columbia's contracts with Brill, Defendant wrote Brill on February 23, 2018 claiming that "discussions and negotiations with regards to the publishing rights for the Encyclopaedia Iranica need to be conducted with EIF representatives" rather than with Columbia.

72.     Defendant sent a subsequent letter to Brill dated April 1, 2019 alleging as follows about Volume 16, Fascicle 4, which was published in October 2018:

> "EIF has not authorized or consented to the use of its mark ENCYCLOPAEDIA IRANICA on this unauthorized Encyclopaedia Iranica fascicle published and distributed by Brill. Furthermore, the publication and sale of this unauthorized Encyclopaedia Iranica fascicle is likely to result in consumer confusion as to its source or origin and falsely suggests EIF's affiliation or endorsement with such publication. EIF therefore demands that Brill immediately cease from advertising, publishing, and/or distributing copies of

the unauthorized Encyclopaedia Iranica fascicle, both online and in print, and that Brill
provide immediate written notice to EIF's undersigned counsel confirming that Brill:
(1) has removed all references to the unauthorized Encyclopaedia Iranica fascicle from
the Brill website and any other websites controlled, operated, or sponsored by Brill or any
other third party it may be working with;

(2) has ceased publishing, distributing, and/or selling copies of this unauthorized
Encyclopaedia Iranica fascicle and any other fascicle(s) using EIF's ENCYCLOPAEDIA
IRANICA mark;

(3) has provided to EIF's undersigned counsel an accounting of the number of any
fascicles that it has sold using EIF's ENCYCLOPAEDIA IRANICA mark and
certification that it has destroyed any such fascicles remaining in Brill's possession or
control; and

(4) has not and will not publish any further fascicles (or volumes) of the Encyclopaedia
Iranica on behalf of Columbia University or any other third party without EIF's prior
written consent."

### Interference With Clarivate

73.     On April 5, 2019, the Center learned that (1) Defendant falsely informed

personnel of Clarivate Analytics ("Clarivate"), the company that hosts the ScholarOne software

that the Center uses to manage publication of the Work, that Defendant owns the Work and (2)

Defendant asked Clarivate to turn over copies of all of the Work's manuscripts and data housed

in the Center's Clarivate platform.

74.     Defendant is not in privity with Clarivate with respect to the Work, but Clarivate

nonetheless turned over all Work-related contents of the Center's ScholarOne platform to

Defendants as Defendants demanded on or about April 4, 2019.

75.      The Center's managing editor noticed Columbia files were moved from the

Clarivate computer system on the morning of April 5, 2019 and immediately filed a case inquiry

to Clarivate.

76.     The Center also called ScholarOne customer service to be connected to the person

listed in ScholarOne's logs as the individual who exported the files to Defendant.

77.     When that person returned the Center's call later that day, the Center asked that ScholarOne immediately stop sending data to Defendant, and informed that person that the contract for ScholarOne was signed by Columbia, not Defendant, and that Columbia owns copyright in the Work.

78.     Upon information and belief, formed after a reasonable investigation, the file transfer from Clarivate to Defendant cannot be undone.

## FIRST CLAIM

79.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 78 above as if fully set forth herein.

80.     By reason of the foregoing, an actual and justiciable controversy of sufficient immediacy and reality has arisen and now exists between Plaintiff and Defendant, under federal copyright law, 17 U.S.C. §§101 *et seq.* concerning their respective rights and interests in the Work.

81.     Plaintiff contends that Defendant is not a copyright owner of the Work or any part thereof.

82.      Defendant contends that it is the owner of copyright in the Work.

83.     Declaratory relief from this Court is necessary pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 *et seq.*, so that the parties may know their respective rights and obligations with respect to the Work.

84.     By reason of the foregoing, Plaintiff is entitled to a declaratory judgment and related relief, declaring that Defendant is not an owner of copyright in the Work.

85.     Plaintiff has no adequate remedy at law.

**SECOND CLAIM**

86.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 78 above as if fully set forth herein.

87.     By reason of the foregoing, an actual and justiciable controversy of sufficient immediacy and reality has arisen and now exists between Plaintiff and Defendant under federal trademark law, 15 U.S.C. §1051 *et seq.* concerning their respective rights and interests in the Encylopaedia Iranica Mark and Logo (collectively, the "Marks").

88.     Plaintiff contends that Defendant is not an owner of exclusive trademark rights in the Marks.

89.     Defendant contends that it is the owner of exclusive trademark rights in the Marks, and on that basis has demanded that Columbia cease and desist from making use of the Marks.

90.     Declaratory relief from this Court is necessary pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 et seq., so that the parties may know their respective rights and obligations with respect to the Marks.

91.     By reason of the foregoing, Plaintiff is entitled to a declaratory judgment and related relief, declaring that Defendant is not an owner of exclusive trademark rights in the Marks.

92.      Plaintiff has no adequate remedy at law.

**THIRD CLAIM**

93.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 78 above as if fully set forth herein.

94.     At all relevant times, a valid agreement subsisted between Columbia and Clarivate regarding the storage of the Work on Clarivate's Scholar One platform (the "Clarivate Contract").

95.     At all relevant times, Defendant had knowledge of the Clarivate Contract.

96.    Defendant's interference with the above-referenced contract as set forth above caused Clarivate to breach the Clarivate Contract by transferring Columbia data to Defendant without Columbia's consent.

97.    The above-described acts of Defendant were intentional.

98.    Columbia has suffered irreparable harm as result of Clarivate's breach of the Clarivate Contract.

99.    Columbia has no adequate remedy at law.

## JURY DEMAND

100.    Pursuant to Fed. R. Civ. P. Rule 38(b), Plaintiff demands a trial by jury on all issues properly triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A.    On the First Claim, declaring that Defendant is not an owner of copyright in the Work, and entering an Order directing Defendant to transfer to Columbia the following copyright registrations, which improperly list Defendant as claimant: CSN0132131, TX0006843795, TX0006843797, TX0006843798, TX0006902459, TX0006902490, TX0006978790, TX0007040264, TX0007040276, TX0007258027, TX0007338068, TX0007399199, TX0005730181, TX0005402206, TX0005482116, TX0005873032, TX0005873033, TX0006020061, TX0005926144, TX0008723423, TX0008723438, TX0008723442.

B.    On the Second Claim, declaring that Defendant is not an owner of exclusive trademark rights in the Marks;

C.    On the Third Claim, that the Court enter an Order directing Defendant to delete or otherwise destroy the data it received from Clarivate as a result of inducing Clarivate to breach the Clarivate Contract with Columbia, and to certify such destruction or deletion;

16

D.     Awarding Plaintiff its costs and disbursements, including reasonable attorneys'
fees, incurred in prosecuting this action; and

E.     Awarding Plaintiff such other and further equitable and legal relief as this Court
may deem necessary, just and proper.

DATED:  August 9, 2019                    Respectfully Submitted,

REITLER KAILAS & ROSENBLATT, LLC


_____
*/s/ Robert W. Clarida*
ROBERT W. CLARIDA

Robert W. Clarida
885 Third Avenue, 20th Floor
New York, New York 10022
Telephone:  (212) 209-3050
Facsimile:  (212) 371-5500
Email:  rclarida@reitlerlaw.com

*Attorneys for Plaintiff*

EXHIBIT A

Copyright Registrations for the Work

[ 1 ]   Encyclopaedia iranica / edited by Ehsan Yarshater
         CSN0132131  2005

[ 2 ]   Encyclopaedia iranica / edited by Ehsan Yarshater
         CSN0132131  2000

[ 3 ]   Encyclopaedia iranica / edited by Ehsan Yarshater
         CSN0132131  1999

[ 4 ]   Encyclopaedia iranica / edited by Ehsan Yarshater
         CSN0132131  1998

[ 5 ]   Encyclopaedia Iranica, Fascicle 14/2
         TX0006843795           2007

[ 6 ]   Encyclopaedia Iranica, Fascicle 14/3
         TX0006843797           2007

[ 7 ]   Encyclopaedia Iranica, Fascicle 14/4
         TX0006843798           2008

[ 8 ]   Encyclopaedia Iranica, Fascicle 14/5 - Jamalzadeh II-Japan IV
         TX0006902459           2008

[ 9 ]   Encyclopaedia Iranica, Fascicle 14/6 - Japan IV-Jobba' I
          TX0006902490          2008

[ 10 ]  Encyclopaedia Iranica, Fascicle 15/1.
         TX0006978790           2009

[ 11 ]  Encyclopaedia Iranica, Fascicle 15/2.
         TX0007040264           2009

[ 12 ]  Encyclopaedia Iranica, Fascicle 15/3
         TX0007040276           2009

[ 13 ]  Encyclopaedia Iranica, Fascicle 15/4

      TX0007258027     2010

[ 14 ]  Encyclopaedia Iranica, Fascicle 15/5

      TX0007338068     2010

[ 15 ]  Encyclopaedia Iranica, Fascicle 15/6

      TX0007399199     2011

[ 16 ]  Encyclopaedia Iranica : vol. 1, fasc. 1, Ab-'Abd--al-Hamid / edited by Ehsan Yarshater.

      TX0005114673     1982

[ 17 ]  Encyclopaedia Iranica : vol. 10, fisheries-gindaros / edited by Ehsan Yarshater.

      TX0005730181     2001

[ 18 ]  Encyclopaedia Iranica : vol. 10, fascicle 6, Germany VI-Gindaros / edited by Ehsan Yarshater.     TX0005402206     2001

[ 19 ]  Encyclopaedia Iranica : vol. 11, fascicle 1, Gioni-Golsani / edited by Ehsan Yarshater.

      TX0005482116     2001

[ 20 ]  Encyclopaedia Iranica : vol. 11, fascicle 4, Greece VIII-Hadith II / edited by Ehsan Yarshater     TX0005873032     2002

[ 21 ]  Encyclopaedia Iranica : vol. 11, fascicle 5, Hadith II-Hajjsayyah / edited by Ehsan Yarshater     TX0005873033     2002

[ 22 ]  Encyclopaedia Iranica : vol. 12, historiography III-homsexuality III / edited by Ehsan Yarshater     TX0006020061     2004

[ 23 ]  Encyclopaedia Iranica : vol. 4, fascicle 1 : Bayju-Behruz / edited by Ehsan Yarshater, 1920-  TX0005077201     1989

[ 24 ]  Encyclopaedia Iranica : vol. 7, Fascicle 1 Dara(B)I-Dastur al-Afazel / edited by Ehsan Yarshater     TX0005022282     1994

[ 25 ]  Encyclopaedia Iranica : vol. 8, fascicle 1, Ebn 'Ayyas--economy V / edited by Ehsan Yarshater TX0005408635     1997

[ 26 ]  Encyclopaedia Iranica : vol. 9 edited by Ehsan Yarshater

      TX0005181160     1999

[ 27 ]   Encyclopaedia Iranica : vol. 9, fascicle 2, Golsani--Great Britain IV

      TX0005534680        2002

[ 28 ]   Encyclopaedia Iranica : vol. XI / edited by Ehsan Yarshater

      TX0005926144        2002

[ 29 ]   Encyclopaedia Iranica, Volume 16, Fascicle 1

      TX0008723423        2012

[ 30 ]   Encyclopaedia Iranica, Volume 16, Fascicle 2

      TX0008723438        2013

[ 31 ]   Encyclopaedia Iranica, Volume 16, Fascicle 3

      TX0008723442        2017

EXHIBIT B

Improperly Assigned Contributions

| Latin Title | Print Title | Author | Online Publication Date |
|---|---|---|---|
| KIRI | IRI | Ahmad Aryavand and Bahram Grami | 09/04/2015 |
| LILAC | LILAC | Ahmad Aryavand and Bahram Grami | 06/29/2015 |
| LILY | LILY | Ahmad Aryavand and Bahram Grami | 06/29/2015 |
| | Mirjalali | Ahmad Ashraf | |
| MIHR YAST | MIHR YAŠT | Almut Hintze | 10/01/2014 |
| YASTS | YAŠTS | Almut Hintze | 09/23/2014 |
| | Kashan 3, History | Mehrdad Amanat | 1/23/2018 |
| KATIRA | KATIR | Amir Kiumarsi and Bahram Grami | 11/20/2015 |
| SAQQEZ | SAQQEZ | Bahram Grami | 09/04/2015 |
| | Qalam | Bahram Grami and Sina Goudarzi | 08/10/2016 |
| | Tavernier, Jean-Baptiste | Pierre-Francois Burger | 12/4/2017 |
| SKAND GUMANIG WIZAR | ŠKAND GUM  N G WIZ  R | Carlo G. Cereti | 12/08/2014 |
| MOIN-AL-DIN NATANZI | MO IN-AL-DIN NA ANZI | Denise Aigle | 08/25/2014 |
| | Schmidt, Hanns-Peter | Touraj Daryaee | |
| | Wolff, Fritz | Jurgen Ehlers | 1/24/2018 |
| | orš  h, Rokn-al-Din | Farhad Daftary | 12/8/2014 |
| NEZAR B. AL-MOSTAN?ER, ABU MAN?UR | NEZ  R B. AL-MOSTAN ER, ABU MAN UR | Farhad Daftary | 12/12/2014 |
| NUR-AL-DIN MOHAMMAD II B. HASAN | NUR-AL-DIN MO AMMAD II B.  ASAN | Farhad Daftary | 11/26/2014 |
| PANDIYAT-E JAVANMARDI | PANDIY  T-E JAV  NMARDI | Farhad Daftary | 11/26/2014 |
| RASED-AL-DIN SENAN | R  ŠED-AL-DIN SEN  N | Farhad Daftary | 11/26/2014 |

| | | | |
|---|---|---|---|
| SAH TAHER HOSAYNI DAKKANI | Š H HER OSAYNI DAKKANI | Farhad Daftary | 05/07/2015 |
| SAMS-AL-DIN MOHAMMAD | ŠAMS-AL-DIN MO AMMAD | Farhad Daftary | 04/25/2015 |
| SARGODASTE-E SAYYEDNA | SARGO AŠTE-E SAYYEDNA | Farhad Daftary | 11/26/2014 |
| FOADI BOSRUI, HASAN | FO DI BOŠRU I, ASAN | Fereydun Vahman | 02/04/2015 |
| DADISO | D DIŠO | Florence Jullien | 11/11/2015 |
| EAST SYRIAN MONASTERIES IN SASANIAN IRAN | EAST SYRIAN MONASTERIES IN SASANIAN IRAN | Florence Jullien | 11/11/2015 |
| XVADAHOY | XVAD HOY | Florence Jullien | 11/11/2015 |
| QAJAR DYNASTY 08. "Big Merchants" in the Late Qajar Period | QAJAR DYNASTY viii. "Big Merchants" in the Late Qajar Period | Gad G. Gilbar | 02/20/2015 |
| | Dagh Bary | Murtazali Gadjiev | 10/20/2017 |
| | Shahristan-i Yazdegerd | Murtazali Gadjiev | 8/9/2017 |
| | Mole | Philippe Gignoux | 1/29/2018 |
| | Golkhani | Evelin Grassi | 3/8/2018 |
| | Posters | Christiane Gruber | 1/30/2018 |
| | Af al-al-Molk Kerm ni | James Gustafson | 12/7/2017 |
| ZEKRAWAYH B. MEHRAWAYH | ZEKRAWAYH B. MEHRAWAYH | Heinz Halm | 01/27/2015 |
| | Rahimzada | Keith Hitchins | 10/10/2017 |
| LURISTAN 05. Religion, Rituals, and Popular Beliefs | LURISTAN v. Religion, Rituals, and Popular Beliefs | Inge Demant Mortensen | 04/03/2015 |
| MAJDU, ESMAIL | MAJDU , ESM IL | Ismail K. Poonawala | 09/22/2015 |
| | Kanga, Maneck Fardoonji | J. K. Choksy | |
| SUR | ŠUR | Jean During | 12/15/2015 |
| SAH-NAMA 06. The Sah-nama as a Source for Popular Narratives | Š H-N MA vi. The Š h-n ma as a Source for Popular Narratives | Julia Rubanovich | 06/25/2015 |
| PADSAH KATUN | P DŠ H TUN | Karin Quade-Reutter | 04/18/2016 |
| | Kahi Kaboli | Majdoddin Keyvani | 9/5/2017 |

| | Khamriya | Majdoddin Keyvani | 9/12/2017 |
|---|---|---|---|
| SAYFI QAZVINI | SAYFI QAZVINI | Kioumars Ghereghlou | 08/26/2015 |
| DEBEVOISE, NEILSON CAREL | DEBEVOISE, NEILSON CAREL | M. J. Olbrycht and V. P. Nikonorov | 05/07/2015 |
| QAZVINI, MOHAMMAD | QAZVINI, MO AMMAD | Mahmoud Omidsalar | 01/28/2016 |
| TASNIF | TA NIF | Margaret Caton | 03/09/2016 |
| MOAYYED AY-ABA | MO AYYED AY-ABA | Maryam Kamali | 03/08/2016 |
| KOROSH 02. Linguistic Overview of Koroshi | KOROSH ii. Linguistic Overview of Koroshi | Maryam Nouraei, Carina Jahani, and Erik Anonby | 04/29/2016 |
| KOROSH 01. The Korosh people | KOROSH i. The Korosh people | Maryam Nouraei, Erik Anonby, and Carina Jahani | 04/29/2016 |
| SILVER | SILVER | Michael Spink | 06/26/2015 |
| MAURICE | MAURICE | Michael Whitby | 11/20/2015 |
| THEOPHYLACT SIMOCATTA | THEOPHYLACT SIMOCATTA | Michael Whitby | 11/20/2015 |
| GHAFFARY, FARROKH | GHAFFARY, FARROKH | Michele Epinette | 09/11/2015 |
| MAZHAR-E ELAHI | MA HAR-E EL HI | Moojan Momen | 04/11/2016 |
| SOBHI, FAZL-ALLAH MOHTADI | OB I, FA L-ALL H MOHTADI | Moojan Momen | 04/27/2015 |
| | Germany xi: Iranian Coins in the Federal Bank of Germany | Karin Mosig-Walburg | 7/25/2016 |
| | Lazar Parpeci | Gohar Muradyan | 1/24/2018 |
| DARBAND EPIGRAPHY 01. Middle Persian Inscriptions | DARBAND EPIGRAPHY i. Middle Persian Inscriptions | Murtazali Gadjiev | 01/26/2016 |
| DARBAND EPIGRAPHY 02. Dar-e Qiamat Shrine | DARBAND EPIGRAPHY ii. Dar-e Qi mat Shrine | Murtazali Gadjiev | 01/26/2016 |
| HEDAYAT, SADEQ 05. Hedayat in India | HEDAYAT, SADEQ v. Hedayat in India | Nadeem Akhtar | 03/12/2015 |
| NEZARI QOHESTANI | NEZ RI QOHEST NI | Nadia Eboo Jamal | 04/06/2015 |
| NAWM-NAMA | NAWM-N MA | Orkhan Mir-Kasimov | 09/17/2015 |
| | Shapur | Bruno Overlaet | 11/3/2017 |
| | Wizarisn I catrang | Antonio Panaino | 10/4/2017 |

| | | | |
|---|---|---|---|
| FADAIAN-E KALQ | FAD   I N-E   ALQ | Peyman Vahabzadeh | 12/07/2015 |
| NATURAL GAS INDUSTRY IN IRAN | NATURAL GAS INDUSTRY IN IRAN | Pirooz Ashraf | 02/26/2016 |
| | Karšipta-/Karšift | Celine Redard | 5/7/2018 |
| SELEUCID EMPIRE | SELEUCID EMPIRE | Rolf Strootman | 04/16/2015 |
| SELEUCID ERA | SELEUCID ERA | Rolf Strootman | 03/25/2015 |
| SELEUCUS | SELEUCUS | Rolf Strootman | 04/16/2015 |
| NAJAF | NAJAF | Rose Aslan | 11/20/2015 |
| | ŠAY  - ALI KHAN ZANGANA | Rudi Matthee | |
| WESTERGAARD, NIELS LUDVIG | WESTERGAARD, NIELS LUDVIG | Rüdiger Schmitt | 02/20/2015 |
| SAYR WA SOLUK | SAYR WA SOLUK | S. J. Badakhchani | 11/26/2014 |
| RAWZA-YE TASLIM | RAW  A-YE TASLIM | S. Jalal Badakhchani | 12/12/2014 |
| HODGSON, MARSHALL GOODWIN SIMMS | HODGSON, MARSHALL GOODWIN SIMMS | Saïd Amir Arjomand | 09/24/2015 |
| | Zayn-al-   bedin Mausoleum | Sandra Aube | 9/28/2017 |
| NASER-AL-MOLK, ABUL-QASEM | N   ER-AL-MOLK, ABU'L-Q  SEM | Shaul Bakhash | 12/03/2015 |
| SCHLERATH, BERNFRIED | SCHLERATH, BERNFRIED | Stefan Zimmer | 01/27/2015 |
| PESYAN, MOHAMMAD-TAQI KHAN | PESY  N, MO  AMMAD-TAQI KHAN | Stephanie Cronin | 05/16/2016 |
| INTERNATIONAL DUNHUANG PROJECT | INTERNATIONAL DUNHUANG PROJECT | Susan Whitfield | 02/20/2015 |
| BUDAQ MONSI QAZVINI | BUD  Q MONŠI QAZVINI | Tilmann Trausch | 12/31/2015 |
| KOI, MIRZA ALIQOLI | O I, MIRZ    ALIQOLI | Ulrich Marzolph | 06/29/2015 |
| NURI, FAZL-ALLAH | NURI, FA  L-ALL  H | Vanessa Martin | 06/19/2014 |
| SOGDIAN LITERATURE 01. Buddhist | SOGDIAN LITERATURE i. Buddhist | Yutaka Yoshida | 06/26/2015 |
| KANJAR BEG, Mirza | ANJAR BEG, Mirz | Zeyaul Haque | 05/11/2016 |
| Kelim | Kelim/Gelim | Sumru Krody | 06/15/2017 |