

Andrew W. Schilling
Partner
1133 Avenue of the Americas
Suite 3100
New York, NY  10036
T (212) 600-2330
aschilling@buckleyfirm.com

August 7, 2020

**By ECF**
Honorable Analisa Torres
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

**Re:**    *The Trustees of Columbia University in the City of New York v. Encyclopaedia Iranica Foundation,* No. 19 Civ. 7465 (AT)(KNT);
*Encyclopaedia Iranica Foundation v. The Trustees of Columbia University in the City of New York, et al.,* No. 19 Civ. 8562 (AT)(KNF)

Dear Judge Torres:

We represent Columbia University in these consolidated actions.  In accordance with Your Honor's individual rules, we respectfully submit this letter to request a conference to address Columbia's anticipated motion to modify the Court's October 17, 2019 Civil Case Management Plan and Scheduling Order ("CMO").  That order memorialized the parties' "agree[ment] to enlist a third-party vendor to assist the parties" in identifying documents in Columbia's possession.  (ECF No. 32 at ¶ 14(b)).  By order dated July 24, 2020, Magistrate Judge Fox declined to entertain Columbia's request for relief from the CMO on this issue, directing that Columbia "must apply to the assigned district judge" for relief from the orders that relate to the inventory.  (ECF No. 74).  That same day, Judge Fox entered another order that directed the parties to proceed with an indoor inventory during a global pandemic, over Columbia's objection that it could not guarantee the safety of the participants and had no protocol developed for such a project.  (ECF No. 73).  By this letter, Columbia also objects to that order.

Although originally conceived as way for the parties to engage in a form of alternative dispute resolution with the "assist[ance]" of a third party, Paragraph 14(b) has instead become the focal point of the case, with EIF's abuse of the process spawning endless disputes that have delayed the litigation indefinitely.  Paragraph 14(b) was explicitly premised upon the fact that the parties had "agreed" to this unorthodox procedure.  While Columbia had initially agreed to an inventory, the inventory that Columbia agreed to was completed in March of this year, and at a substantial cost.  Although Columbia has turned over 12 boxes of materials and a flash drive, even that has not narrowed the scope of the issues in this case.  At the same time, EIF's recent motion for a TRO and preliminary injunction belies its claim that it somehow needs an inventory before it can begin to litigate this case.  For months, EIF has protested that the absence of an inventory precluded it from litigating; but its aggressive motion practice demonstrates that these claims have been false all along.  Also, the vendor recently advised the parties that, in order to move forward, the parties must pay another retainer, negotiate a new scope of work, and sign a new letter of engagement.  (*See* Ex. A).  Since the first inventory proved ineffective at narrowing disputes and has only delayed this case, Columbia is not interested in entering into a second engagement with the vendor.

Judge Analisa Torres
Page 2

We therefore respectfully submit that the Court should modify Paragraph 14(b) of the CMO in light of changed circumstances, including not only the intervening COVID-19 pandemic and EIF's newfound ability to litigate; but also, most significantly, the fact that the parties no longer "agree" to enlist a third party vendor for purposes of an inventory. Instead, Columbia requests that the Court enter a new CMO that resets the discovery and pleading deadlines in this case, puts the case back on track, and relies on traditional discovery to develop the facts.

I.  **Background**

On August 8, 2019, nearly one year ago, Columbia commenced this action seeking declaratory relief with regard to EIF's claims of ownership of certain copyrights and trademarks associated with the *Encyclopaedia Iranica*, a Columbia University project. On September 19, 2019, EIF countersued alleging, among other things, that Columbia was holding certain "records, documents, and assets" allegedly belonging to EIF.

A.  **Paragraph 14(b) of the CMO Immediately Leads to Disputes and Delay**

On October 17, 2019, the Court entered the CMO. The CMO memorialized an agreed-upon schedule for discovery, pursuant to which all fact discovery in the case would be completed by February 12, 2020. The CMO also memorialized the fact that, at the case management conference, the parties had "agree[d] to enlist a third-party vendor to assist the parties in identifying and accessing documents currently in the possession of Columbia."

Contrary to its purpose of narrowing disputes for litigation, Paragraph 14(b) of the CMO immediately led to new disputes among the parties, including with regard to what each of the parties had "agreed" to with regard to the scope of the inventory. On November 7, 2019, the Court clarified that the vendor was to create an inventory of "*all* materials in Columbia's possession for which ownership is disputed." (ECF No. 49 (emphasis added)). The Court's interpretation opened the door for EIF to declare itself the sole arbiter of what materials were in "dispute" and EIF then claimed that *all* of the property at the Center for Iranian Studies was potentially theirs and therefore in dispute.[1]  (*See* Ex. B at 3 (January 17, 2020 email from EIF's counsel stating that "we do not and will not limit this review to Columbia's assertions" and, therefore, "if there is other property on site (including artwork and paper or electronic documents), we will demand an inventory of that property as well")).

B.  **FTI Delivers the Inventory, Concluding its Initial Engagement**

Despite these disputes, Columbia proceeded with the inventory in good faith and, on January 14, 2020, the parties entered into an engagement letter with the vendor, FTI. That engagement was predicated on an estimate by FTI that the engagement would cost $60,070. (ECF No. 51-2). FTI completed the project and delivered the inventory to both parties on March 5, 2020. Within one week after that, Columbia released to EIF 12 boxes of documents, seven file folders, and a flash drive. (ECF No. 51-1). EIF of course claimed that it was not satisfied with FTI's work

---

[1] EIF's position is plainly without merit as the *Encyclopaedia Iranica* is only one aspect of the work at the Center. For example, the Center also publishes *A History of Persian Literature*, a 20-volume multi-author series that is separate from the *Encyclopaedia Iranica*. EIF has had no role in this other publication.

product, and further disputes and delays have ensued as a result. (*See* ECF Nos. 63, 65, 68, 69, 70, 71, 72). On March 9, for example, counsel for EIF emailed FTI complaining that the inventory was "incomplete" and not specific enough and that, therefore, "EIF considers the entire inventory preliminary in nature." (Ex. C).

### C. The COVID-19 Pandemic

Almost immediately after the inventory was delivered by FTI in early March, the challenges posed by "completing" the inventory increased dramatically when the COVID-19 pandemic caused a shutdown of non-essential offices at Columbia, including the Center for Iranian Studies. This Court's most recent order with regard to the inventory, dated June 11, recognized that new reality, directing the parties to "meet and confer to discuss a timeline for completing the inventory, **considering any necessary precautions that may need to be taken in light of the COVID-19 pandemic."** (ECF No. 77 (emphasis added)). Although the parties conferred as required, once again the parties could not agree on how to move forward. Columbia proposed postponing the inventory until the University reopened safely. EIF insisted on going forward, arguing that the vendor as well as representatives of both parties should proceed with an indoor inventory, even before Columbia had re-opened the Center and before Columbia had in place a protocol to proceed safely in this environment. And, again, EIF sought to unilaterally expand the inventory to materials that are plainly outside of the scope of any ownership dispute. (*See* Ex. D at 6 (June 22, 2020 letter from EIF to Judge Fox requesting that the "recommencement of the inventory" include the creation of "forensic images of the computers used on behalf of EIF")).

Although Columbia submitted evidence to Judge Fox that Columbia could not guarantee the safety of the participants, had no safety protocol in place for such a project, and would be burdened by diverting its limited resources to prepare for one (ECF No. 69), Judge Fox overruled Columbia's objections (ECF. No. 73). Judge Fox failed to adequately consider the health and safety risks, including not only the risks of working on site but also traveling to the site; gave no consideration to the undue burden on Columbia of having to set aside essential re-opening efforts to develop a protocol for this project; and failed to weigh the burdens on Columbia (both safety and administrative burdens) against the purported need to move forward with a second inventory.

### II. The Court Should Modify the CMO to Eliminate Paragraph 14(b) and Enter a New Schedule for Expedited Discovery

Under Rule 16, a case management order may be modified upon a showing of "good cause." *SEC v. Lek Sec. Corp.*, No. 17 Civ. 1789 (DLC), 2019 WL 3729386, at *4 (S.D.N.Y. Aug. 7, 2019) (quoting Fed. R. Civ. P. 16(b)(4)). "Good cause" may be established by "demonstrating that reasonably unforeseeable events occurring after the entry of the scheduling order precluded compliance" with the order. *Am. Honda Motor Co., Inc. v. V.M. Paolozzi Imports, Inc.*, No. 10 Civ. 955 (FJS), 2013 WL 1296421, at *2 (N.D.N.Y. Mar. 26, 2013) (internal citations omitted). The "interpretation and application of Rule 16 must be consistent with Rule 1's mandate to 'secure the just, speedy, and inexpensive determination of every action.'" *Rubik's Brand Ltd. v. Flambeau, Inc.*, 329 F.R.D. 55, 58 (S.D.N.Y. 2019).

Good cause exists to modify the CMO to eliminate Paragraph 14(b). ***First,*** the COVID-19 pandemic and the resulting effect on the operations of the University clearly constitute unforeseeable events that occurred after the entry of the CMO. Courts in this District have

recognized that the normal conduct of civil litigation must give way during this global pandemic. On this point, Judge Caproni's decision in *Joffe v. King & Spalding* is particularly instructive. There, the Court refused to order in-person depositions to proceed, recognizing that the risk of COVID-19 exposure and infection imposed an unacceptable burden on the participants. No. 17 Civ. 3392 (VEC), 2020 WL 3453452, at *1 (S.D.N.Y. June 24, 2020). Specifically, Judge Caproni found that the plaintiff's "proposed social distancing does not guarantee a safe deposition environment," and stressed that "the unique risks posed by COVID-19 are as present today as they were in May: ***it is a potentially fatal illness with the ability to spread through asymptomatic or pre-symptomatic carriers, with no approved cure, treatment, or vaccine***." *Id*. at *7 (emphasis added). The significant health risks and practical difficulties posed by in-person activities conducted in closed spaces described by Judge Caproni in *Joffe* would be equally present—if not greater—if the parties were to attempt a second iteration of the inventory now demanded by EIF. In short, the nature of the work required here—multiple people spending prolonged periods indoors working together in small indoor spaces—heightens the risks of infection and transmission, both to the participants, and by extension, to their families.

**Second**, because the inventory project has not narrowed the issues in the litigation and is only causing more delay and expense, the University has now withdrawn its agreement to enlist a third-party to assist with the inventory. Paragraph 14(b) was premised on the agreement of both parties, and both parties no longer agree. The Federal Rules do not authorize an order allowing one party to force an unwilling adversary to enter into an engagement to pay a third party to enter upon its private property to search its files, image its computers, and report on what it found. Yet that is what Paragraph 14(b) would amount to without Columbia's consent.

**Finally**, modifying the CMO would serve to accelerate this litigation. The CMO proposed by the parties, which notably did not include Paragraph 14(b), contemplated that fact discovery would be over by **February 2020**. It is now August 2020, and discovery has not even commenced. Because all deadlines are effectively stayed until the inventory is completed, the inventory itself is delaying rather than accelerating the pace of the litigation. If the parties were to proceed with the inventory, they would need to negotiate a new engagement letter and a new scope of work; the vendor would need to conduct multiple, additional site visits; a safety protocol would need to be established; and a new inventory would have to be conducted on site in confined spaces during a global health crisis that has killed more than 160,000 people in this country. At best, it would take months to complete a new inventory, and if the past is any indication, EIF will surely complain that the second inventory is just as flawed as the first, spawning more litigation and more delay. In the meantime, ECF has demonstrated its willingness and ability to litigate when it chooses to do so, initiating motion practice while at the same time refusing to answer Columbia's complaint.

Columbia is eager to move this litigation forward and reach the merits. EIF's recent motion demonstrates that it is capable of moving forward with litigation without a second inventory. We thus respectfully request that the Court schedule a conference on Columbia's proposed motion to amend the CMO as soon as practicable after the August 14 hearing on EIF's motion for a preliminary injunction. We thank the Court for its consideration of this submission.

Respectfully submitted,

*/s/ Andrew W. Schilling*

cc: All counsel of record (via ECF)