```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
```
THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW
YORK,

                    Plaintiff,

        -against-

ENCYCLOPAEDIA IRANICA
FOUNDATION,

                    Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: _10/8/2020_

19 Civ. 7465 (AT) (KNF)

```
ENCYCLOPAEDIA IRANICA FOUNDATION,
INC.,

                    Plaintiff,

        -against-

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK,
ELTON DANIEL AND BRILL USA, INC.,

                    Defendants.
```

19 Civ. 8562 (AT) (KNF)

**ORDER**

ANALISA TORRES, District Judge:

On July 24, 2020, Encyclopaedia Iranica Foundation, Inc. ("EIF") filed an application for a temporary restraining order ("TRO"), ECF No. 91,[1] enjoining the Trustees of Columbia University in the City of New York ("Columbia"), Elton Daniel, and Brill USA, Inc. (together, "Defendants"), from using "counterfeit imitations of EIF's trade name, domain name, and registered ENCYCLOPÆDIA IRANICA marks in connection with the advertising and sale of printed and online publications." ECF No. 91-1 at 1. After a telephonic hearing, on July 31, 2020, the Court granted the TRO. ECF No. 105. The Court extended the TRO for good cause

---

[1] All docket entries refer to documents as numbered in *Encyclopaedia Iranica Foundation, Inc. v. Trustees of Columbia University in the City of New York, et al.*, No. 19 Civ. 8562 (S.D.N.Y.), unless otherwise noted.

for an additional 55 days in order to consider the parties' submissions on the question of whether the TRO should be converted into a preliminary injunction. ECF Nos. 110, 129.

On August 20 and 26, 2020, the Court held an evidentiary hearing by videoconference. *See* Aug. 20 Tr., ECF No. 132; Aug. 26 Tr., ECF No. 130. EIF called the following witnesses: Ramine Rouhani, chairman of its board of directors, Soodabeh Nelson, treasurer and board member, M. Nader Ahari, Esq., EIF's former attorney, and James Eisenbraun, owner of Eisenbrauns, Inc., a publishing company. Aug. 20 Tr. at 203. The following witnesses testified on behalf of Columbia and Daniel: Margaret Edsall, associate vice president for academic planning, Kai-Joachim Kamrath, executive director for gift administration, Mohsen Ashtiany, associate editor, Center for Iranian Studies, and Elton Daniel, its interim director. Aug. 26 Tr. at 321, ECF No. 130. The Court finds the witnesses credible, but rejects those portions of EIF's witnesses' testimony which contradict the Court's findings of fact. Following are the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

The late Ehsan Yarshater, Ph.D., a native of Iran, was a scholar of Persian language and literature. Prelim. Inj. Ex. OO at 47, ECF No. 149-3. His affiliation with Columbia spanned six decades. Daniel Decl. ¶ 5, ECF No. 97. Yarshater began teaching there in 1958 as a visiting professor of Indo-Iranian studies, and became a tenured faculty member in 1960. *Id.* He was named the Hagop Kevorkian Professor of Iranian Studies in 1960, and served as director of the university's Center for Iranian Studies (the "Center") for over thirty years. *Id.* In 2002, Yarshater stepped down from his teaching responsibilities, but continued to serve as director of the Center until 2016. *Id.*; Aug. 26 Tr. at 309:10–12. He devoted his life to "giv[ing] an

accurate history" of "Iranian civilization and its contribution" to the world. Aug. 20 Tr. at 169:22–25.

In 1981, Yarshater founded the Encyclopaedia Iranica (the "Encyclopaedia"), a print and online publication dedicated to the study of Iranian civilization from prehistory to the present. Prelim. Inj. Ex. 2.17 at 1, ECF No. 147-23. Yarshater contracted to publish the first fascicle, or installment, of the Encyclopaedia, which was released in 1982. Prelim. Inj. Ex. HHH at 1–2; Prelim. Inj. Ex. S-1 at 3, ECF No. 148-18. More than a dozen volumes of the Encyclopaedia have been published, featuring thousands of articles. *See* Prelim. Inj. Exs. 13–27, ECF Nos. 147-32–147-46; *see also* Aug. 20 Tr. at 44:9–15. Each fascicle and volume cover has displayed the mark "ENCYCLOPÆDIA IRANICA." *See* Prelim. Inj. Exs. S-1–S-8, ECF Nos. 148-18–148-25; *see also* Prelim. Inj. Exs. 13–27. Each fascicle bears the legend "Center for Iranian Studies Columbia University." *See* Prelim. Inj. Exs. S-1–S-8.

In 1990, Yarshater founded EIF, a not-for-profit organization[2] affiliated with the Encyclopaedia. Prelim. Inj. Ex. 2.13, ECF No. 147-19. He served as its president until 2017, Prelim. Inj. Ex. 2.1, ECF No. 147-7, and sat on the board of directors until a few months before his death in September 2018, at the age of 98, Aug. 20 Tr. at 55:23–56:1, 167:9–12, 70:11–12; Prelim. Inj. Ex. 4 at 2, ECF No. 147-28. As a significant source of funding for the Encyclopaedia, EIF footed the bill for the project's operating costs. Aug. 20 Tr. at 179:3–5. EIF paid for the publication and dissemination of the Encyclopaedia's articles, the website developers, the domain for hosting the website, the salaries of certain employees, and the license for a database to store unpublished articles—all without reimbursement from Columbia. Aug. 20

---

[2] According to EIF's 2015 and 2018 tax returns, EIF had not-for profit-status under 26 U.S.C. § 501(c)(3). Prelim Inj. Ex. K at 3, ECF No. 148-11; Prelim Inj. Ex. N at 3, ECF No. 148-14.

Tr. at 178:18–179:8, 185:16–22.  From 1993–2017, EIF also donated $5.3 million to the Center.  Daniel Decl. ¶ 16.

Although EIF claims it was created to "ensure the uninterrupted and permanent continuation of the [E]ncyclopaedia," Aug. 20 Tr. at 174:19–22, the documentary and testimonial evidence shows that EIF was established primarily as a fund-raising vehicle.  EIF's certificate of incorporation states that its purpose is to provide "an endowment fund for the Encyclopaedia."  Prelim. Inj. Ex. 3 at 4, ECF No. 147-27.  In EIF's 2008 annual report, Yarshater wrote that "the [f]oundation concentrates on raising funds."  Prelim. Inj. Ex. C at 8, ECF No. 148-3.  In addition, the 2015 tax filing defines its mission as "promot[ing] the cause of the Encyclopaedia . . ., a Columbia . . . project, through the establishment of an endowment fund."  Prelim. Inj. Ex. K at 34, ECF No. 148-11.  Yarshater, revered for his scholarship, raised millions of dollars with the help of individuals in the Iranian diaspora.  Aug. 20 Tr. at 27:12–27:19, 68:2–7, 174:19–175:6, 178:3–17.  Wealthy in his own right, Yarshater also contributed money to the project.  *Id.*

In 2017, Yarshater retired as editor-in-chief of the Encyclopaedia, and was replaced by Elton Daniel, Ph.D., an expert in Middle Eastern and Islamic history.  Daniel Decl. ¶ 1; Aug. 26 Tr. at 299:14–300:3.  Daniel also assumed the role of director of the Center.  Daniel Decl. ¶ 1.  EIF negotiated the terms of Daniel's contract with Columbia, Aug. 20 Tr. at 181:13–16, but Columbia ultimately interviewed him for and appointed him to the position.  Aug. 26 Tr. at 253:23–254:4, 299:14–17.  In early 2018, Columbia "offered [EIF], at its request, an opportunity to participate in" the rededication of the Center, as the Ehsan Yarshater Center for Iranian Studies, *see* Aug. 26 Tr. at 274:21–275:3, apparently in exchange for a $5.5 million contribution to the Center's endowment.  Aug. 20 Tr. at 56:19–57:12.  EIF declined.  *Id.*  Months later, on

4

July 20, 2018, EIF applied to register the ENCYCLOPÆDIA IRANICA mark with the United States Patent and Trademark Office.  Prelim. Inj. Ex. 1.1 at 1, ECF No. 147-2.

In October 2018 and October 2019, Columbia and Koninklijke Brill NV, its publisher, published two additional fascicles of the Encyclopaedia.  Prelim. Inj. Ex. S-8 at 60, 63, ECF No. 148-25.  These lawsuits arise from the parties' conflicting claims over the ownership of the intellectual property associated with the Encyclopaedia.

## CONCLUSIONS OF LAW

I. <u>Preliminary Injunction</u>[3]

A. Standard of Review

A party seeking a preliminary injunction related to a copyright or trademark infringement must demonstrate:

> (1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation; (2) that he is likely to suffer irreparable injury in the absence of an injunction; (3) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (4) the balance of hardships between the plaintiff and defendant tips in the plaintiff's favor; and (5) the public interest would not be disserved by the issuance of a preliminary injunction.

*NYP Holdings v. N.Y. Post Pub. Inc.*, 63 F. Supp. 3d 328, 334–35 (S.D.N.Y. 2014) (internal quotation marks, alteration, and citation omitted).

B. Analysis

EIF claims that it owns the ENCYCLOPÆDIA IRANICA mark and that its ownership must be protected.  EIF Br. at 16, ECF No. 135.  The Court disagrees.  To prevail on a claim for trademark infringement and unfair competition, EIF must prove that (1) it has a valid mark

---

[3] The Court has considered only the testimony and exhibits presented during the evidentiary hearing.  *See* ECF No. 129; *see also* Aug. 26 Tr. at 302:23–303:1.  Accordingly, each party's request to strike its adversary's proposed extraneous submissions at ECF Nos. 142–143 is GRANTED.

5

entitled to protection; and (2) Columbia's use of that mark is likely to cause confusion. *The Deal, LLC v. Korangy Pub., Inc.*, 309 F. Supp. 2d 512, 522 (S.D.N.Y. 2004); *see also Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.,* 192 F.3d 337, 344 (2d Cir. 1999). EIF must make the same showing with respect to its trademark counterfeiting claim. *Spin Master Ltd. v. 158*, No. 18 Civ. 1774, 2020 WL 2766104, at *10 (S.D.N.Y. May 28, 2020).

Although registering a trademark is *prima facie* evidence that the mark is valid, merely registering a mark first does not confer ownership. *See NYP Holdings*, 63 F. Supp. 3d at 335 ("A certificate of registration for a trademark is prima facie evidence that the mark is registered and valid (i.e., protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." (internal quotation marks and citations omitted)). Instead, the user must also show that it was the first to use the mark in commerce because "registration creates no substantive trademark rights against infringement beyond the common law rights acquired through use of the mark." *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018) (internal quotation marks and citation omitted). To the extent that an individual "is the first to use a particular mark to identify his goods or services in a given market, and so long as that owner continues to make use of the mark, he is entitled to prevent others from using the mark to describe their own goods in that market." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 147 (2d Cir. 2007) (internal quotation marks omitted).

EIF registered its trademark on October 19, 2019. EIF Br. at 16. Both sides concede, however, that the mark was first used nearly forty years earlier in 1982. *Id.* at 1–2; Def. Br. at 6–7, ECF No. 134. The parties also agree that another person or entity used and controlled the mark prior to EIF—EIF arguing that Yarshater maintained control and Defendants contending that the mark was controlled by Columbia. *See* EIF Br. at 16; Def. Br. at 20–21; *Liebowitz v.*

6

*Elsevier Sci. Ltd.*, 927 F. Supp. 688, 696 (S.D.N.Y. 1996) ("[W]hoever controls the quality of the goods marketed under the trademark is the source and therefore owns the trademark."). To show that trademark rights transferred from a prior owner, the party claiming ownership "must show a 'clear manifestation of intent' by [the prior owner] to transfer ownership of trademark rights." *Excell Consumer Prod. Ltd. v. Smart Candle LLC*, No. 11 Civ. 7220, 2013 WL 4828581, at *22 (S.D.N.Y. Sept. 10, 2013) (citing *Haggar Int'l Corp. v. United Co. for Food Indus. Corp.,* 906 F. Supp. 2d 96, 111 (E.D.N.Y. 2012)).

  EIF contends that Yarshater controlled, and memorialized his desire to transfer, the ENCYCLOPÆDIA IRANICA mark to EIF. EIF Br. at 23. In support, EIF points to language in the foundation's 2008 annual report prepared by Yarshater, which states that EIF's "charter empowers it to carry out the project independently, if necessary." Prelim. Inj. Ex. C at 8; *see* EIF Br. at 21. But, EIF pulls this quotation out of context. The full excerpt from the report reads as follows: "Even though [EIF's] charter empowers it to carry out the project independently, if necessary, in practice the Center . . . carries out the academic functions of the Encyclopaedia, while [EIF] concentrates on raising funds for the project." Prelim. Inj. Ex. C at 8. Thus, Yarshater's own words do not suggest that he owned the mark, let alone that he exhibited a "clear manifestation of intent" to transfer it to EIF. *Excell*, 2013 WL 4828581, at *22.

  Nor do EIF's corporate bylaws or contracts entered into with publishers show that Yarshater transferred ownership to EIF. EIF Br. at 21–22. Although Yarshater may have directed EIF's attorney to write that EIF shall have "absolute and unqualified ownership of all aspects of the intellectual property" in its bylaws, this provision does not establish Yarshater's control of the mark. EIF Br. at 21–22; Prelim. Inj. Ex. 5 ¶ 1.1(c), ECF No. 147-29; *Excell*, 2013 WL 4828581, at *22 (Finding that "oral permission to register a trademark is not sufficient to

7

establish an agreement" to transfer a trademark.). Similarly, Yarshater's entering into contracts on behalf of EIF and approving its expenses do not demonstrate that the mark was transferred. EIF Br. at 21–22; *Excell*, 2013 WL 4828581, at *22. Moreover, none of EIF's witnesses could identify any documents that show Yarshater's clear intention to transfer the trademark to EIF. Aug. 20 Tr. at 138:11–22, 195:1–18.

The evidence presented at the hearing compels the finding that Yarshater founded EIF to serve as a funding vehicle for the Encyclopaedia, not as the transferee of its intellectual property. *See, e.g.*, Prelim. Inj. Ex. 3 at 4; Prelim. Inj. J at 30; Prelim. Inj. Ex. K at 34. The Court concludes, therefore, that EIF can not meet its burden on the first prong—establishing a likelihood of success on the merits or a sufficiently serious question going to the merits—and declines to evaluate the remaining factors. Accordingly, the application for a preliminary injunction is DENIED.

II.     Document Inventory

According to EIF, Columbia refuses to return documents that belong to EIF and that are vital to its claims and defenses. EIF Opp. at 24, ECF No. 141. On October 17, 2019, the Court ordered a case management plan, which memorialized an agreement between the parties to enlist a third-party vendor to create an inventory of documents in Columbia's possession. ECF No. 45 ¶ 14(b). On November 7, 2019, the Court issued an order clarifying that "[t]he third-party vendor shall create an inventory of all materials in Columbia's possession for which ownership is disputed." ECF No. 49 at 1. On June 11, 2020, the Court again ordered Columbia to complete

the inventory, and to consider "any necessary precautions that may need to be taken in light of the COVID-19 pandemic." ECF No. 77 at 5.

On August 7, 2020, Defendants requested that the Court modify the case management plan "in light of changed circumstances" and sought a hearing on the issue. ECF No. 108 at 1–2. Defendants argued that the case management order should be set aside for "good cause" due to the COVID-19 pandemic. *Id.* at 3–4. EIF then proposed several protocols that would facilitate the inventory during a pandemic. *See, e.g.*, ECF No. 125 at 4 (EIF proposed "remote observation of the inventory by video.").

"Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (internal quotation marks and citation omitted). "A finding of good cause depends on the diligence of the moving party." *Id.*

Here, Defendants have not demonstrated good cause for vacating this Court's order to conduct a document inventory. Defendants now cite to the ongoing COVID-19 crisis, despite first being ordered to undertake the inventory on October 17, 2019, and despite EIF's proposed accommodations, to which Columbia did not respond.

Accordingly, Defendants' requests are DENIED.

## CONCLUSION

EIF's and Defendants' requests to strike ECF No. 140–140-3 and the table at EIF Opp. at 12–13 are GRANTED.  EIF's motion for a preliminary injunction is DENIED.  Defendants' requests for a pre-motion hearing and modification of the case management plan are DENIED.

SO ORDERED.

Dated: October 8, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge