UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,<br><br>*Plaintiff*,<br><br>v.<br><br>ENCYCLOPAEDIA IRANICA FOUNDATION,<br><br>*Defendant*. | Case No.: 1:19-cv-07465-AT-JW |
| ENCYCLOPAEDIA IRANICA FOUNDATION, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, ELTON DANIEL, and KONINKLIJKE BRILL N.V.,<br><br>*Defendants*. | Case No.: 1:19-cv-08562-AT-JW |

**ELECTRONIC DISCOVERY ORDER**

**I.   GENERAL TERMS**

**1. Application.** The procedures set forth in this Order will govern the production of "documents" and "electronically stored information" (as those terms are used in the Federal Rules of Civil Procedure) that are stored in electronic format, including paper documents that have been converted to an electronic format (collectively, "ESI"), in the Action.

**2. Definitions.**

   a.   The term "Party" means any named party to this Action, including any named Party added or joined to any complaint in this Action.

      b.   The term "Parties" collectively means all named parties to this Action, including any named Party added or joined to any complaint in this Action.

      c.   The term "Production ESI" shall mean ESI produced under this Order.

      d.   The term "Producing Party" shall mean the Party responsible for compiling and producing ESI in accordance with the terms of this Order in response to a request for production of documents.

      e.   The term "Requesting Party" shall mean the Party serving the requests for production of documents, including a request for the production of discoverable ESI.

**3.   Reservation of Rights.** This Order does not alter, expand, or constitute an exhaustive list of the discovery obligations or rights of a Producing Party or Requesting Party. All Parties reserve all rights under the Federal of Civil Procedure and the Federal Rules of Evidence.

**II.   DOCUMENT PRODUCTION PROCEDURES**

**4.   General Format of Production.** Each Party shall produce documents in Tagged Image File Format (TIFF), with links to certain types of documents in native format, as described here, extracted text or OCR as applicable, a load file with metadata fields, and a TIFF image load file, as described here.

**5.   ESI Production.** With respect to production of ESI:

      a.   E-mail will be produced as single-page TIFF files with related extracted text and metadata (to the extent it is reasonably available) and bibliographic information, as described in the Metadata & Requested Field Names set forth in Exhibit A: Metadata & Requested Field Names ("Exhibit A"). Each email in electronic format and its responsive attachment(s) must be produced as separate documents where the attachments follow the cover e-mail in order.

  b. Other electronic documents, including word-processing documents, spreadsheets, presentations and all other non-database electronic documents not specifically discussed elsewhere in this Order will be produced as single-page TIFF files with related extracted text and metadata (to the extent it is reasonably available) and bibliographic information as described in Exhibit A, except for:

   i. Excel files will be produced in native format with related extracted text and metadata (to the extent it is reasonably available) and bibliographic information;

   ii. PowerPoint files will be produced in native format and in single-page TIFF files with related extracted text and metadata (to the extent it is reasonably available), bibliographic information, and speaker notes;

   iii. Access databases will be produced in native format with extracted text and metadata (to the extent it is reasonably available) and bibliographic information;

   iv. Other types of files that do not image properly (i.e., audio or video files) will be produced in native format with extracted text and metadata (to the extent it is reasonably available);

   v. The Producing Party will produce data exported from databases in a reasonably useable format, such as Excel or pdf report. If data from databases or other structured data sources cannot be produced in a reasonably useable format, the Parties will meet and confer to discuss the issue.

  c. If specialized software that is not generally commercially available is required to access any produced ESI, the Parties will meet and confer regarding the issue.

  d. All ESI should be processed with all hidden text (e.g., track changes, hidden columns, comments, markups, notes, etc.) expanded, extracted and rendered in the TIFF file. When

processing ESI for review and for production in TIFF format, the Producing Party will instruct its vendor to force off Auto Date and force on hidden columns or rows, hidden worksheets, speaker notes, track changes, and comments. If the file cannot be expanded, the native file will be produced with the image file.

      e. For files provided in native that need to be redacted, no native file will be provided. Except that for Excel spreadsheets, if the spreadsheet cannot be rendered to TIFF in readable format, the Party may redact the spreadsheet in native format if the Producing Party keeps a pristine copy of the original Excel spreadsheet. In situations where Excel spreadsheets are rendered to TIFF for redactions, all hidden columns and sheets should be revealed on the TIFF image.

      f. All ESI shall be produced using Greenwich Mean Time or UTC.

6. **Hard Copy (or Paper) Documents.** Each Party shall produce hard-copy documents as single-page TIFF files with related OCR text and the metadata fields identified in Exhibit A as applicable to hard copy documents that have been imaged. All hard-copy documents shall be converted into electronic images for production purposes unless the Party has chosen not to image the documents because it would present an undue burden and in that case, the Parties will meet and confer regarding the appropriate method of production. When imaged for production, hard copy documents should be separated so that each individual document is a separate document (for example, a printed letter is one document and its enclosed attachment is a separate document), to the extent apparent from the physical characteristics of the documents, such as paperclips, staples, etc. The relationship of documents in a document collection shall be maintained through the scanning or conversion process. If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document. Such information shall be produced in the load file, as hereafter defined, in a manner to enable the

parent-child relationship among documents in a document collection to be reconstituted by the Requesting Party in commercially available document management software, such as Relativity. The source of the documents shall be noted in the file path field (e.g., box number, folder name, etc.). For documents that contain affixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document.

7. **Form and Manner of Production.** All production document images will be provided as single-page Tagged Image File Format ("TIFFs" or ".tiff format"). All images shall be black and white images at 300 DPI resolution and shall be saved and produced in a Group 4 compression single-page "TIFF" format and reflect, without visual degradation, the full and complete information contained on the original document. Each Party shall produce a "load file" that is compatible with a commercially available document management software to accompany the images, which load file shall include information about where each document begins and ends to facilitate the use of the produced images through a document management or litigation support database system. More specifically, each Party shall produce metadata load files with standard Concordance delimiters and an OPT file to accompany the images.

8. **Color.** Where an original document contains color, the Parties shall honor reasonable requests for the production of a color image of the document.

9. **De-Duplication and Email Threading.** Where a single document has more than one identical copy of a document (i.e., the documents are visually the same and contain the same electronic text), the Parties need only produce a single copy of that document; however, the production load file for that single copy must indicate all custodians (from whom the Producing Party has agreed to produce) from which identical copies of that document existed and were collected prior to de-duplication. ESI may be de-duplicated across custodians using industry

standard hash values. If a duplicate document exists that is part of a document family, the duplicate will only be removed, pursuant to the terms of this paragraph, if the entire family is removed as a duplicate, i.e. a single document will not be removed from a family even if it is a duplicate. No Party may de-duplicate near duplicates (*i.e.,* documents containing handwriting or other alterations will not be considered duplicates). The Parties will de-duplicate exact duplicates according to the following requirements:

      a.  All custodians for whom the Parties agree to produce data and who were in possession of a de-duplicated document must be identified in the Duplicate Custodians metadata field.

      b.  The Parties further agree that an email that includes content in the BCC or other blind copy field will not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.

      c.  If the Producing Party becomes aware of any file that was incorrectly filtered during the de-duplication process, the Producing Party will immediately produce the document to the Requesting Party if it is determined to be responsive and not privileged.  In addition to deduplication, the Parties may also deploy commercially reasonable technology to limit their review and production to the most inclusive email threads. Where multiple email messages are part of a single chain or "thread," Parties are only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced. To illustrate, if person A emails person B with an attachment,

and A and B subsequently exchange eight emails as part of the same chain, the Parties may limit their review and production to both (i) the initial email that includes the attachment and (ii) the final email that contains the complete text of all of the previous emails in the chain.

**10. Bates Numbering.** Each Party shall produce imaged documents with a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the document image other than a confidentiality legend (consistent with the Stipulated Protective Order, 19 Civ. 8562, ECF No. 128 or any additional protective order entered in the case), redactions (where applicable) and the Bates Number identified above. Any confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document. With respect to the identification of files produced in their native format, the Bates Number and confidentiality designations, if any, shall be included in the Bates number and confidentiality fields noted in Exhibit A with the load file accompanying the production of such native files and the Bates number shall be included in the file name. Bates Numbered slip sheets shall be provided for each native file produced. Bates Numbered slip sheets will also be provided for any documents removed from responsive families prior to production such as privileged or nonresponsive documents or in situations where a document cannot be rendered to TIFF. The slip sheet will identify the reason for the removal (e.g., privileged document removed; not responsive document removed; document could not render to TIFF, etc.).

**11. File Naming Conventions.** Each page image file shall be named with the unique Bates Number of the page of document, followed by the extension ".TIF". In the event the Bates Number

contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

**12. Production Media.** Each Party shall produce documents on an encrypted CD-ROM, DVD, external hard drive, an FTP site, or such other readily accessible computer or electronic media (the "Production Media") and the password to the encrypted files shall be provided separately from the production. Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "-001"; "-002").

**13. Metadata.** Each Party shall produce associated metadata consistent with the description set forth in Exhibit A where reasonably available.

**14. OCR/Extracted Text.** Each Party shall produce corresponding Optical Character Recognition ("OCR") text files for all hard-copy documents (unless it poses an undue burden, and in that case, the Parties will meet and confer per paragraph 6, above) and any electronic documents that require redaction prior to production. For documents that exist natively in electronic format that have not been redacted and that are produced as images, each Party shall produce extracted text files reflecting the full text that has been electronically extracted from the original, native electronic files or, where the electronic files do not have extracted text, OCR will be provided. These text files will be named with the unique Bates Number of the first page of the corresponding document followed by the extension ".txt." The OCR and extracted text files shall be produced in a manner suitable for importing the information into commercially available document management or litigation support software such as Concordance.

**15. Decryption.** Each Party shall take reasonable efforts to ensure that all documents produced in native format are decrypted.

**16. Embedded Files.** If a document has another file embedded in it (*i.e.*, a PowerPoint presentation that has a spreadsheet embedded in it), the embedded files will be produced as independent document records. Embedded files should be assigned Bates numbers that directly follow the Bates numbers of the documents within which they are embedded. If the Producing Party cannot produce any of the embedded files as a standalone file, the Producing Party will promptly notify the Requesting Party in writing of the affected embedded files, after which the Parties will meet and confer. All embedded files produced under this procedure will be produced subject to the same requirements set forth in Section III. Load files for such embedded files will refer to the parent document in which the file was embedded.

**17. Redaction.** If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. However, to the extent that the text is searchable in the native format, the Producing Party will replace the extracted unredacted text with OCR. For paper documents, the Producing Party will provide OCR for the portion of the documents that have not been redacted. The Parties will meet and confer if it is determined that redaction should be done in Native rather than TIFF on particular types or categories of documents. The Producing Party will retain on file an unredacted original copy of all Documents produced in redacted form.

**18. Password-protected files.** The Producing Party will make reasonable efforts to open and access password-protected files that are identified as likely to be relevant documents.

**19. Appearance and Content.** Subject to redactions by the Producing Party, each document's electronic image will, to the extent reasonably practicable, convey the same information and image as the original document. To the extent the document is produced with an OCR file, such OCR file will reflect the document as redacted.

### III. PRIVILEGE

**20. Privilege Log.** If a Producing Party withholds responsive ESI based on a claim of privilege, the Producing Party will provide a privilege log in compliance with Federal Rule of Civil Procedure 26(b)(5)(a) and Local Rule 26.2. The Parties recognize that production of documents will likely occur on a rolling basis.

**21. Email Thread/String.** An email thread/string may be logged in a single entry and only the senders, recipients, copyees and blind copyees in the most recent e-mail in the string need be included on the log, however if there are third parties in the string that are not in the most recent email in the string and the prior emails in the string are both (1) subject to discovery under the Parties discovery agreement or pursuant to an order of the Court and (2) have not been produced, the Producing Party must identify those third parties in the log description, along with their position, employer, and their relationship to the Producing Party.

**22. Categorical Privilege Log.** The Parties will comply with Federal Rule of Civil Procedure 26(b)(5)(a) and Local Rule 26.2 with respect to the use of categorical privilege logs.

**23. Documents Redacted for Privilege.** Documents that are redacted shall be identified as such on a privilege log and shall comply with Federal Rule of Civil Procedure 26(b)(5)(a) and Local Rule 26.2.

**24. Objected to Documents.** The Parties agree that no Party is required to conduct a search or prepare a privilege log for any discovery request or portion thereof to which the Producing Party objects to producing responsive documents based on a ground other than privilege unless and until the objections have been overruled; the right to object based on the attorney-client privilege or work product doctrine is preserved until that time. The Parties agree that the Producing Party may withhold nonresponsive attachments from document families that contain at least one responsive

10

non-privileged document if a slip sheet is inserted indicating that the document was withhold as nonresponsive. Cover e-mails to responsive documents will be produced unless privileged.

**25. Inadvertent Production of Privileged or Otherwise Protected Material.** The Parties' obligations regarding the inadvertent production of privileged or otherwise protected material are set forth in Paragraphs 11 to 14 of the Stipulated Protective Order entered by the Court in this Action.

**26. Documents Not to Be Logged on Privilege Log.** Any communications created after commencement of the litigation on August 9, 2019 need not be included on a privilege log. The Parties also agree that no Party needs to log any internal communications with counsel of record in the litigation or their law firms, *i.e.*, (1) communications between EIF Board members or employees and Arent Fox or Levine Lee; (2) communications between Columbia employees and Buckley or Reitler; or (3) communications between Brill USA employees and Block & Roos.

**IV.    SEARCH TERMS**

**27.** The Parties will use the previously agreed upon search terms and custodians when filtering documents to be reviewed.

**V.    TERMS AND CONDITIONS**

**28. Cooperation.** The Parties will, as necessary, meet and confer to exchange information regarding issues associated with any electronic production of ESI, including regarding the utilization of Technology Assisted Review (TAR) to further narrow the universe of documents that hit on the search terms.

**29. Modification by Agreement**. Any Party added or joined to any complaint in the Litigation and any Party to actions that may be consolidated into or coordinated with the above-captioned matters after the date of this ESI Order may deviate from the ESI Order set forth herein provided

such party obtains leave of Court to do so or provided all affected Parties consent in writing. Before seeking Court intervention, Plaintiffs and Defendant shall meet and confer in good faith regarding any modification.

In light of the disparate data systems and architectures that may be employed by the Parties, variations from this ESI Order may be required. In the event that any Party identifies a circumstance where application of this ESI Order is not technologically possible, would be unduly burdensome or impractical, or when another process would satisfy the objective and reach the same result with less burden, the Party will notify the Requesting Party of the exception and before implementing an alternative, specify an alternative procedure that is not unduly burdensome or impractical that will be employed, if one exists. Upon request by the Requesting Party, those Parties will meet and confer regarding the circumstances and proposed alternative approaches.

**30. Modification by Court Order**. Nothing in this ESI Order waives the right of any Party to petition the Court for an Order modifying its terms upon sufficient demonstration that compliance with such terms is either (1) unexpectedly and unreasonably burdensome, or (2) impossible, provided, however, that counsel for such Party must first meet and confer with counsel for the opposing Party and the Parties shall use reasonable best efforts to negotiate an exception from or modification to this ESI Order prior to seeking relief from the Court.

31. **Dispute Procedures.** The Parties will meet and confer to resolve any procedures or disputes that arise under this Order.

**SO STIPULATED.**

For Encyclopaedia Iranica Foundation, Inc.

Signed: _/s/ SBK_

Name: Scott B. Klugman

Dated: 7/18/22

For Columbia and Elton Daniel:

Signed: _/s/ BJW_

Name: Brian J. Wegrzyn

Dated: 7-13-22

For Koninklijke Brill N.V:

Signed: _/s/ SJR_

Name: Sigmund J. Roos

Dated: 7/18/22

**SO ORDERED.**

Dated: July 19, 2022
New York, New York

_/s/ Jennifer E. Willis_
JENNIFER E. WILLIS
United States Magistrate Judge

# EXHIBIT A

## METADATA AND REQUESTED FIELD NAMES

| Field Name | Field Description | Email/Calendar Items | Other ESI | Hard Copy |
|---|---|:---:|:---:|:---:|
| Custodian / Source | Name of custodian(s) or source(s) from which documents/ ESI were obtained | X | X | X |
| Duplicate Custodian | Name of custodians for whom a party agreed to produce documents who was a custodian of the document but the copy of the document was deduplicated during processing | X | X | |
| Beg Doc# | Start Bates Number (including prefix) | X | X | X |
| End Doc # | End Bates Number (including prefix) | X | X | X |
| BEGATTACH | Bates number of first page of parent document | X | X | X |
| ENDATTACH | Bates number of last page of last attachment | X | X | X |
| Number of Pages | Page count | X | X | X |
| Parent ID | Parent's Start Bates Number (including prefix); only parent/child files | X | X | X |
| Attach ID | Child/children Start Bates Number (including prefix) for each child. This field will be blank if the record is a stand-alone document. | X | X | X |
| Record Type | Record Type field assigned in processing (Email, Email attachment, E-Doc; E-Doc attachment, Calendar Appointment, etc.) | X | X | X |

| Field Name | Field Description | Email/Calendar Items | Other ESI | Hard Copy |
|---|---|---|---|---|
| Confidentiality | Confidentiality Designation | X | X | X |
| MD5/SHA1 Hash | Document MD5 or SHA1 has value | X | X | |
| From | Author of email or calendar item | X | | |
| To | Names of recipients of the email | X | | |
| CC | Names of individuals copied on the email | X | | |
| BCC | Names of individuals blind copied on the email | X | | |
| Subject | Email or calendar subject | X | | |
| Sent Date | Date email was sent (format YYYYMMDD) | X | | |
| Time Sent | Time email was sent (format HH:MM) | X | | |
| Received Date | Date email was received (format YYYYMMDD) | X | | |
| Time Received | Time email was received (format HH:MM) | X | | |
| Doc Author | Author value extracted from file metadata | | X | |
| File Name | File name of native document | X | X | |
| Doc Title/Subject | Subject field value extracted from file metadata | | X | |
| File Extension | File extension of native file | X | X | |
| File Create Date | Date and time native file was created (format YYYYMMDD, HH:MM) | | X | |

15

| Field Name | Field Description | Email/Calendar Items | Other ESI | Hard Copy |
|---|---|---|---|---|
| File Last Modified Date | Date and time native file was last modified (format YYYYMMDD, HH:MM ) | | X | |
| File Path | Original file path to native file, where reasonably feasible to provide | X | | X |